UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

GEORGE H. DECKER,

        *Plaintiff/Petitioner,*

v.                                     Case No:  5:15-cv-24-Oc-30PRL

CITRUS COUNTY, a political
Subdivision of the State of Florida,

        *Defendant/Respondent.*
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant Citrus County's (the "County") Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 27) and Plaintiff's response in opposition thereto (Doc. 30).  The Court having reviewed the motion and response, and being otherwise fully advised in the premises, concludes that the County's motion should be granted in part and denied in part.

## BACKGROUND[1]

In 2003, Plaintiff George Decker began to acquire a property known as Pirate's Cove located in the Ozello community of Citrus County, Florida.  By January 2012, Plaintiff acquired all 3.6 acres comprising the Pirate's Cove property.  Pirate's Cove is

---

[1]In considering a motion to dismiss, a court must accept the factual allegations of the complaint as true and evaluate all inferences derived from those facts in the light most favorable to the plaintiff.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Accordingly, these facts were gleaned from Plaintiff's first amended complaint (Doc. 24) and the exhibits attached to Plaintiff's original complaint and incorporated by reference into the first amended complaint, and they do not constitute findings of fact.

mostly vacant, but beginning in 2011, Plaintiff took steps to start development of the property.

Plaintiff desired to develop a resort condominium on Pirate's Cove with approximately thirty units that would permit occupancies of 180 days or less.  To achieve this end, Plaintiff began drafting a request to negotiate a development agreement pursuant to Florida Statutes §§ 163.3221-.3243 and § 78.83 of the Citrus County Land Development Code.[2]  Plaintiff filed a request to negotiate a development agreement with the County on January 27, 2012, and he submitted an initial executive summary of a planning review to the County describing the development as a "resort condominium" with occupancies "presently expected to be approximately six months."[3]  (Doc. 1, Exs. D, F at 5).  The Citrus County Board of County Commissioners (the "Board") approved the request on February 14, 2012.  (Doc. 1, Exs. D, E).

On December 27, 2012, Plaintiff submitted an application for approval of a development agreement to the County, which attached condominium documents describing the intended 185-day-maximum occupancy of the development.[4]  (Doc. 1, Ex. I at 43).  Plaintiff provided the final planning review to the County in July 2013, which also described the project as a "33 [unit] resort condominium [which] will be owned by individual owners who may use those units up to approximately 185 days per year.  For

---

[2]The Citrus County Land Development Code was subsequently rewritten and the applicable provision—former § 78.83—was encapsulated in Chapter 12 of the revised code.

[3]On October 5, 2012, Plaintiff submitted a revised initial executive summary of the planning review, which also described the intended occupancies as six months.  (Doc. 1, Ex. G at 5).

[4]Prior to submitting the application, Plaintiff held various neighborhood meetings and pre-application meetings with County staff regarding the project.

the remaining approximately 180 days of the year the unit must be in the rental pool." (Doc. 1, Ex. W).

At the application review meeting on August 15, 2013, County staff expressed to Plaintiff, for the first time, that the concept of a resort condominium with occupancies in the 180-day range was prohibited based upon a reading of the Florida Building Code ("FBC") and the Citrus County Comprehensive Plan (the "Comprehensive Plan"). County staff also informed Plaintiff at this meeting that the County would be unable to fulfill its obligations under the proposed development agreement.

On January 24, 2014, Plaintiff met with County staff to further discuss the rationale behind their determination that the occupancies must be limited to thirty days because, according to Plaintiff, this interpretation rendered the project infeasible. County staff explained during the meeting that their interpretation was based upon a change to the FBC defining the term "transient," which County staff opined was automatically incorporated into the Comprehensive Plan. After the meeting, Plaintiff made a formal request for the County to make a determination regarding the permitted occupancy at Pirate's Cove. (Doc. 1, Ex. K at 20-25). The County provided a written determination on May 13, 2014, concluding that the occupancies at Pirate's Cove would have to be limited to thirty days. (Doc.1, Ex. K at 28-30).

The written determination discussed policy 4.10.10 of the Comprehensive Plan, which provides, in pertinent part:

> New construction or expansion of the following residential occupancy uses are allowed within the Coastal High Hazard Area:

> R1: Residential occupancies where the occupants are primarily *transient* in nature, including: Boarding housing (transient), hotels, and motels.

(Doc. 1, Ex. K at 29) (emphasis added).  The 2004 version of the FBC did not contain a definition of the term "transient."  However, the FBC was amended so that the 2010 version defined the term transient as "[o]ccupancy of a dwelling unit or sleeping unit for not more than 30 days."  (*Id.*).  County staff opined that the Comprehensive Plan incorporated the FBC definition of "transient" by reference.  (Doc. 1, Ex. K at 30).  Thus, County staff concluded that pursuant to the FBC amendment the occupancies at Pirate's Cove could not exceed thirty days.  (Doc. 1, Ex. K).  Plaintiff appealed the decision to the Board, and ultimately prevailed on appeal.

Because the County could not fulfill its obligations pursuant to the development agreement, Plaintiff withdrew the application for the development agreement and instead decided to pursue approval of a planned unit development ("PUD") for Pirate's Cove.  Plaintiff also submitted an application for amendments to the Generalized Future Land Use Map and the Zoning Atlas.  While the amendment application was pending, Plaintiff's architect engaged in conversation with County staff regarding the yield of the proposed development based on the permitted floor area ratio ("FAR").

The FAR is determined by dividing the gross floor area of a building by the area of the lot on which it is located.  (Doc. 24 at 15 n.3).  Gross floor area was previously defined:

> The sum of the gross horizontal areas of the several floors of a building measured from the exterior face of exterior walls or from the centerline of a wall separating two buildings, but not including interior parking spaces, loading space for motor vehicles, or any space where the floor-to-ceiling height is less than six feet.

(Doc. 1, Ex. M at 1).  In 2012, however, the County amended the definition of gross floor area via Ordinance 2012-06, which provides:

> The floor area within the inside perimeter of the exterior walls of the building under consideration, exclusive of vent shafts and courts, without deduction for corridors, stairways, closets, the thickness of interior walls, columns, or other features.  The floor area of a building, or portion thereof, not provided with surrounding exterior walls shall be the usable area under the horizontal projection of the roof or floor above.  The gross floor area shall not include shafts with no openings or interior courts.

(Doc. 1, Ex. M at 1-2).

One County staff member opined that under the revised definition of gross floor area, the ground floor of the building, which would contain an open parking area, was not included in the calculation.  A second County staff member disagreed, however, stating that the open parking area under the building must be included in calculating the gross floor area pursuant to the revised definition.  According to Plaintiff, a FAR calculation that included the open, ground-floor parking lot in the gross floor area would reduce the yield of the Pirate's Cove project by twenty-five percent.

Plaintiff's land use planning consultant challenged the interpretation of gross floor area as including the ground floor and also opined that, alternatively, the project should be evaluated based on the previous definition of gross floor area which was in effect when the first application for approval of the development was submitted.  (Doc. 1, Ex. M).  County staff agreed that Plaintiff's original application was vested under the previous definition of gross floor area, but, according to Plaintiff, County staff implied that any new application might be subject to the current definition of gross floor area, which would include the ground floor in the gross-floor-area calculation.  (Doc. 1, Ex. N).

Despite these apparent disagreements with County staff, Plaintiff submitted the application for approval of the PUD as an addition to his pending application for amendments to the Generalized Future Land Use Map and the Zoning Atlas on August 13, 2014.  The applications were heard by the Planning Commission on October 2, 2014, and by the Board on December 16, 2014.  (Doc. 1, Ex. U).  Both the Planning Commission and the Board denied the applications.  (Doc. 1, Ex. U at 132; Ex. V at 146-47).

On January 15, 2015, Plaintiff initiated this action by filing a complaint raising various state and federal law claims against the County arising from disagreements between Plaintiff and the County during Plaintiff's pursuit to develop Pirate's Cove as a resort condominium.  The County filed a motion seeking a more definite statement of Plaintiff's complaint, or, alternatively, seeking dismissal of Plaintiff's complaint.  (Doc. 9).  The Court granted in part and denied in part the County's motion, dismissing with prejudice several counts of the complaint but allowing Plaintiff an opportunity to amend his claim for denial of equal protection (Count III).  (Doc. 20).  Plaintiff's claims for declaratory judgment (Count VI) and for certiorari review of the County's decision denying his PUD application (Count VIII) were permitted to proceed as pled.  (*Id.*).

Plaintiff then filed a motion seeking partial reconsideration of dismissal of his temporary takings claim (Count IV) and requesting permission to add a claim for state-law inverse condemnation to his complaint to be pled as a prerequisite to his takings claim.  (Doc. 21).  The Court granted Plaintiff's motion.  (Doc. 23).  Consequently, Plaintiff added a state-law claim for inverse condemnation to his first amended complaint and also asserted

a claim, in the event his inverse condemnation claim was unsuccessful, for a temporary

taking under the Fifth Amendment.  (Doc. 24).

The County again moves for dismissal of Plaintiff's claims under Federal Rule of

Civil Procedure 12(b)(6).  (Doc. 27).

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed

for failure to state a claim upon which relief can be granted.  In considering a motion to

dismiss under Rule 12(b)(6), a court must accept the factual allegations of the complaint

as true and evaluate all inferences derived from those facts in the light most favorable to

the plaintiff.  *See Erickson*, 551 U.S. at 94.  Conclusory allegations, unwarranted factual

deductions, or legal conclusions masquerading as facts, however, are not entitled to the

assumption of truth.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Davila v. Delta Air*

*Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## ANALYSIS

### 1. Denial of Equal Protection under the Fifth and Fourteenth Amendments (Count III)

Plaintiff asserts an equal protection claim based on the differential treatment of

Pirate Cove's from that of comparators Margueritagrill and Riverside Resort.  (Doc. 24 at

19-21).   Specifically, Plaintiff alleges that Pirate's Cove was subjected to rigorous

enforcement of County rules, ordinances, regulations, and policies, while the comparators

were not subjected to similarly rigorous enforcement.   (*Id.*).   The Court previously

dismissed this claim without prejudice because Plaintiff failed to allege facts demonstrating

7

that the comparators were similarly situated.  (Doc. 20 at 11).  The County contends that Plaintiff has not remedied this deficiency in that Plaintiff has only alleged facts showing that Plaintiff was treated differently than the comparators, not that the comparators were similarly situated.  (Doc. 27 at 3-5).

The Equal Protection Clause provides that "[n]o State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1.  The Supreme Court has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that [he or] she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  "To prove a 'class of one' claim, the plaintiff must show (1) that he [or she] was treated differently from other similarly situated individuals, and (2) that the defendant unequally applied a facially neutral ordinance for the purpose of discriminating against him [or her]."  *Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1307 (11th Cir. 2009).

In establishing that he or she was treated differently from similarly situated individuals, a plaintiff generally must identify comparators.  *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1202-07 (11th Cir. 2007); *see also Crystal Dunes Owners Ass'n Inc. v. City of Destin*, 476 F. App'x 180, 184-85 (11th Cir. 2012).  Moreover, the "showing that two projects were similarly situated requires some specificity," *Campbell v. Rainbow City*, 434 F.3d 1306, 1314 (11th Cir. 2006), which means that the projects being compared "must be *prima facie* identical in all relevant respects."  *Racine Charter One, Inc. v. Racine*

8

*Unified Sch. Dist.*, 424 F.3d 677, 680 (7th Cir. 2005) (internal quotation marks omitted). "A 'class of one' plaintiff might fail to state a claim by omitting key factual details in alleging that it is 'similarly situated' to another." *Griffin Indus., Inc.*, 496 F.3d at 1205; *see also Apothecary Dev. Corp. v. City of Marco Island*, 517 F. App'x 890, 892 (11th Cir. 2013).

Plaintiff asserts that Margueritagrill and Riverside Resort are similarly situated to Pirate's Cove because, like Pirate's Cove, both properties are commercial waterfront properties with uses that are considered to be "water dependent." (Doc. 24 at 19-20). In supporting his position that the allegations of his first amended complaint sufficiently demonstrate that his property was similarly situated to that of the comparators, Plaintiff relies on the Eleventh Circuit's decision in *Executive 100, Inc. v. Martin County*, 922 F.2d 1536, 1541 (11th Cir. 1999). In *Executive 100*, the Eleventh Circuit upheld equal protection claims asserted by two plaintiffs who owned parcels of land located along a newly constructed segment of Interstate 95. *Id.* at 1538. The plaintiffs applied to the county to change the zoning designation of their parcels from agricultural/rural ranchette to industrial, and the county denied their applications. Around the same time, however, the county granted two other applications to amend the zoning designation on parcels also located along Interstate 95. *Id.* With no discussion of the similarly-situated requirement, the Eleventh Circuit concluded that the plaintiffs stated viable claims for violation of equal protection. *Id.* at 1541.

Plaintiff's reliance on *Executive 100* is misplaced. As a preliminary matter, the court in *Executive 100* did not directly address the question of whether the plaintiffs

9

sufficiently alleged that the comparators were similarly situated. Nevertheless, the *Executive 100* plaintiffs' situation is distinguishable from Plaintiff's situation. In *Executive 100*, the allegations demonstrating the similarities between plaintiffs and the identified comparators did not require greater factual detail because, for the most part, the decision of the county was one-dimensional, and did not involve consideration of a variety of factors.

In the present case, however, the County's decision was "undeniably multi-dimensional, involving varied decisionmaking criteria applied in a series of discretionary decisions made over an extended period of time." *Griffin Indus., Inc.*, 496 F.3d at 1203. In pleading a "class of one" equal protection claim, a challenged decision that is multidimensional necessitates a greater level of factual detail so that the court can determine whether the governmental action was the result of discrimination. *Id.* at 1205. Thus, when a decision is multi-dimensional, it is more onerous to establish that a comparator is similarly situated. *Id.* ("[W]hen plaintiffs in 'class of one' cases challenge the outcome of complex, multi-factored government decision-making processes, similarly situated entities must be very similar indeed." (internal quotation marks omitted)).

Plaintiff also directs the Court's attention to *Bloomingdale Development, LLC v. Hernando County*, No. 8:07-CV-575-T-30MAP, 2009 WL 347786 (M.D. Fla. Feb. 11, 2009), and emphasizes that the equal protection claim in that case was permitted to proceed past summary judgment on allegations less complete than those asserted by Plaintiff. (Doc. 30 at 7-8). The Court disagrees. In *Bloomingdale Development*, plaintiff filed an equal protection claim alleging that the county treated two phases of the same project differently

10

by granting an exception as to one phase of the project but denying it as to the other. *Bloomingdale Development*, 2009 WL 347786, at *1-5.  The plaintiff alleged that the two phases were adjoining parcels, located in the same subdivision, part of the same master plan, in the same phase of development, sought the same relief, and were subject to the same or similar governmental decisionmaking process.  *Id.* at *10.  The court concluded that the plaintiff sufficiently alleged that the two phases were similarly situated such that the equal protection claim stated a genuine issue of material fact and survived defendant's motion for summary judgment.  *Id.*

The allegations in *Bloomingdale Development* are significantly more detailed than Plaintiff's.  Plaintiff's first amended complaint is practically devoid of any facts showing that the comparators are similarly situated to Plaintiff.  The only fact Plaintiff relies upon to demonstrate that Pirate's Cove was similarly situated to Margueritagrill and Riverside Resort are that the developments are commercial waterfront properties that are water dependent.  This is simply too broad a criteria to fulfill the similarly-situated requirement. *See Griffin Indus.*, 496 F.3d at 1203 (noting that "[t]oo broad a definition of 'similarly situated' could subject nearly all state regulatory decisions to constitutional review in federal court and deny state regulators the critical discretion they need to effectively perform their duties.").  Given the multidimensional nature of Plaintiff's claim, Plaintiff's allegations are insufficient to demonstrate that Margueritagrill and Riverside Resort are similarly situated to Pirate's Cove.  Plaintiff must allege with greater specificity the existence of similarly-situated comparators; otherwise his "class of one" equal protection claim fails.

11

Because Plaintiff has not demonstrated the existence of similarly-situated developments that were treated differently from Pirate's Cove, Plaintiff's equal protection claim is inadequate.  Plaintiff's equal protection claim should therefore be dismissed. Plaintiff will be provided a final opportunity to amend this claim.

## 2.  Temporary Taking (Count IV)

Plaintiff asserts a claim for a temporary taking under the Fifth Amendment as an alternative to his claim for inverse condemnation.  (Doc. 24 at 21-23).  Generally, for a regulatory takings claim to be ripe, a property owner must show that the government has issued a final decision and must allege

> either that the state law provides him [or her] no process for obtaining just compensation (such as an action for inverse condemnation) or that the state law appears to provide such process, but due to state court interpretation, the process is inadequate.

*Agripost, Inc. v. Miami-Dade Cnty.*, 195 F.3d 1225, 1231 (11th Cir. 1999); *see also Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186-87 (1985).  Florida law provides for an inverse condemnation action to compensate parties for a temporary taking.  *See Abusaid v. Hillsborough Cnty. Bd. of Cnty. Comm'rs*, 637 F. Supp. 2d 1002, 1016 n.13 (M.D. Fla. 2007) ("The State of Florida provides an adequate procedure for seeking just compensation, namely, a remedy for inverse condemnation.").

The County argues that Plaintiff's claim for a temporary taking is not ripe, and, even if ripe, fails as a matter of law.  (Doc. 27 at 5-10).  The Court agrees that Plaintiff's temporary takings claim is not ripe.  Nevertheless, the Court permitted Plaintiff to amend

his complaint to add a claim for inverse condemnation under Florida law.  (Doc. 23).  The Court also permitted Plaintiff to include a claim for a temporary taking to be considered only in the event that his inverse condemnation claim is unsuccessful.  (Doc. 23).  Both Plaintiff and Defendant agree that Plaintiff's claim for a temporary taking should be abated until Plaintiff's inverse condemnation claim is fully adjudicated.  (Doc. 27 at 6; Doc. 30 at 8).  Because this claim is not ripe, the Court declines to consider it on the merits, but it grants the parties' request to abate litigation of this claim until Plaintiff's inverse condemnation claim has been fully adjudicated.

### 3. Declaratory Judgment Regarding the Floor Area Ratio Determination (Count VI)

Plaintiff seeks declaratory judgment that Citrus County Ordinance 2012-06, which contains the most current definition of gross floor area, is void because the County did not enact the ordinance in accordance with the procedures established by Florida Statute § 125.66(4)(b)(2), which provides the language that should be used in publishing notices of hearings regarding amendments to ordinances.  (Doc. 1 at 29-31).  Specifically, § 125.66(4)(b)(2) states that the title of the notice should read "NOTICE OF (TYPE OF) CHANGE."  Here, the heading of the notice regarding the change to the ordinance defining gross floor area stated, "Notice of Intent to Consider an Ordinance Regulating Land Development in Citrus County to be Known as the Citrus County Land Development Code." (Doc. 1, Ex. T).  According to Plaintiff, because this heading did not indicate that it reflected a change, it was not in substantial compliance with § 125.66(4)(b)(2).  (*Id.* at 29).

Plaintiff also alleges that the County failed to comply with Florida Statute § 163.3194(2) in enacting Ordinance 2012-06, which requires that a review and recommendation be made by the local planning agency regarding the relationship of the proposed regulation to the comprehensive plan. (*Id.* at 29-30). Florida Statute § 163.3194(2) provides:

> After a comprehensive plan for the area, or element or portion thereof, is adopted by the governing body, no land development regulation, land development code, or amendment thereto shall be adopted by the governing body until such regulation, code, or amendment has been referred either to the local planning agency or to a separate land development regulation commission created pursuant to local ordinance, or to both, for review and recommendation as to the relationship of such proposal to the adopted comprehensive plan, or element or portion thereof. Said recommendation shall be made within a reasonable time, but no later than within 2 months after the time of reference. If a recommendation is not made within the time provided, then the governing body may act on the adoption.

Plaintiff alleges that no such review and recommendation occurred regarding Ordinance 2012-06.

Based on the County's failure to comply with these Florida Statutes, Plaintiff requests that Ordinance 2012-06, containing the definition of gross floor area, be declared void ab initio. The County renews its previous argument that its notice substantially complied with Florida Statute § 125.66(4)(b)(2). (Doc. 27 at 11). The County also argues that even taking Plaintiff's allegations as true, it did not violate Florida Statute § 163.3194(2) such that the ordinance is invalid. (Doc. 27 at 13-14).

As to the County's renewed argument that Plaintiff failed to demonstrate that it did not comply with Florida Statute § 125.66(4)(b)(2), the Court recognizes that the rule articulated in *Neumont v. Florida*, 451 F.3d 1284, 1286 (11th Cir. 2006) requiring strict

compliance with the notice requirements extends only to § 125.66(4)(b)(2)'s direction that the advertisement be in "substantially" the same form as provided for in the statute. The Court previously took issue with the County's argument because it provided no support for its proposition that its notice was in "substantially" the same form as required by the statute. The crux of Plaintiff's argument is whether the omission of the word "change" alters the message intended to be conveyed by the notice. Since the County did not make a compelling argument that its notice substantially complied with the statute, the Court denied its request to dismiss Plaintiff's claim for declaratory judgment.

The County still does not articulate what is required by "substantial" compliance nor does it present a compelling argument that its notice conformed to this vague concept of "substantial" compliance. Without more, the Court concludes that it is inappropriate to dismiss Plaintiff's claim on the County's present argument. *See Brady v. Medtronic, Inc.*, No. 13-CV-62199-RNS, 2014 WL 1377830, at *6 (S.D. Fla. Apr. 8, 2014) ("Generally, a 'litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. The court will not do his research for him.'" (quoting *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (internal quotation marks omitted))).

As to Florida Statute § 163.3194(2), the Court agrees with the County that Decker's allegations do not demonstrate violation of that provision. Decker admits in his amended complaint that Ordinance 2012-06 was referred to the local planning agency, was considered, and was recommended for approval. (Doc. 24 at 24; Ex. Q). Rather, Plaintiff's qualm is that the local planning agency did not make a finding regarding the ordinance's

relationship to the comprehensive plan.  But under the plain language of the statute, such a finding is not necessary to the viability of an ordinance.  Florida Statute § 163.3194(2) specifically contemplates a scenario where such a finding is not made, i.e., if an ordinance is referred to the local planning agency and no recommendation or review is made within two months after referral, the governing body may act on the adoption.  Thus, even if the local planning agency failed to make a finding regarding Ordinance 2012-06's relationship to the comprehensive plan, such failure is not critical to the ordinance's validity.

Plaintiff's claim is allowed to stand to the extent that Plaintiff argues that Ordinance 2012-06 is void because the County violated Florida Statute § 125.66(4)(b)(2), but is dismissed to the extent Plaintiff argues that the ordinance is void because the County did not comply with Florida Statute § 163.3194(2).

### 4.  Petition for Writ of Certiorari (Count VIII)

Until the Court resolves Plaintiff's Motion for Entry of an Order to Show Cause as to Count VIII Petition for on the Record Review (Doc. 25), the County has no obligation to respond to Plaintiff's request for a writ of certiorari.  The Court recognizes the County's reservation of its right to respond to the petition if necessary.

### 5.  Inverse Condemnation (Count IX)

Finally, Plaintiff's first amended complaint asserts a claim for inverse condemnation under Florida law for the alleged taking of his property rights.  (Doc. 24 at 44-45).  Plaintiff asserts that the County intentionally delayed the development of his project in several respects to such an extent that it amounted to a temporary taking of his property to which he is entitled to just compensation.  (*Id.*).  Specifically, Plaintiff highlights the County's

failure to object to the 180-day proposed occupancy of the project until eighteen months after the intended occupancy had been disclosed to the County.  (*Id.* at 45).  The County argues that Plaintiff's claim for inverse condemnation is vague and fails to identify that the County actually "took" anything or the conduct of the County that amounted to a taking. (Doc. 27 at 15-16).  The County also argues that his claim for inverse condemnation is not ripe because Plaintiff cannot show that a final decision was ever made as to his property. (*Id.*).

Plaintiff's claim for inverse condemnation is vague and confusingly pled.  Plaintiff's claim will therefore be dismissed with leave to amend to allege with greater clarity the conduct of the County that allegedly resulted in a temporary taking.  To the extent it appears that Plaintiff alleges that a temporary taking occurred because the County, during negotiations for the development agreement, belatedly expressed concern regarding the length of the occupancies intended for the Pirate's Cove resort condominium project, the Court concludes that Plaintiff has not alleged facts demonstrating that the temporary taking "denie[d] substantially all economically beneficial or productive use of [the] land." *Tampa-Hillsborough Cnty. Expressway Auth. v. A.G.W.S. Corp.*, 640 So. 2d 54, 58 (Fla. 1994), *as clarified* (June 23, 1994).

As such, Plaintiff's claim for inverse condemnation should be dismissed, but Plaintiff will be granted leave to amend the claim.

## CONCLUSION

Accordingly, it is therefore **ORDERED AND ADJUDGED** that:

17

1.   Defendant Citrus County's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 27) is GRANTED in part and DENIED in part.

2.  Count III is DISMISSED without prejudice.

3.  Count IV is abated until Plaintiff's claim for inverse condemnation has been fully adjudicated.

4.  Count VI is DISMISSED in part.

5.  Count IX is DISMISSED without prejudice.

6.  Within fourteen (14) days of the date of this Order, Plaintiff may file a second amended complaint correcting the deficiencies noted above.

**DONE** and **ORDERED** in Tampa, Florida, this 10th day of November, 2015.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

18