**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION**

GEORGE M. DECKER,

    Plaintiff,

v.                                                                      Case No: 5:15-cv-24-Oc-30PRL

CITRUS COUNTY, a political
subdivision of the State of Florida,

    Defendant.
_____/

# ORDER

THIS CAUSE comes before the Court upon Defendant Citrus County's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 40) and Plaintiff's response in opposition (Doc. 46). The Court having reviewed the motion and response, and being otherwise fully advised in the premises, concludes that the County's motion should be granted.

The background of this case was thoroughly laid out in the Court's previous order on the County's motion to dismiss Plaintiff's first amended complaint. (*See* Doc. 32). Because the facts in the second amended complaint do not differ significantly from the facts alleged in the first amended complaint, it is unnecessary to restate the facts here. The facts as stated in the previous order are hereby incorporated by reference. (Doc. 32).

## **DISCUSSION**

### A. Standard of Review

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted. In considering a motion to dismiss under Rule 12(b)(6), a court must accept the factual allegations of the complaint as true and evaluate all inferences derived from those facts in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Conclusory allegations, unwarranted factual deductions, or legal conclusions masquerading as facts, however, are not entitled to the assumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

### B. Analysis

Plaintiff's second amended complaint contains counts for denial of equal protection under the Fifth and Fourteenth Amendments (Count III), temporary taking as an alternative to Count IX (Count IV), declaratory judgment (Count VI), and inverse condemnation (Count IX).[1] (Doc. 39). The County seeks to dismiss with prejudice Plaintiff's claims for denial of equal protection (Count III), temporary taking (Count IV), and inverse condemnation (Count IX). (Doc. 40).

#### 1. Denial of Equal Protection (Count III)

Plaintiff asserts an equal protection claim based on the alleged differential treatment of Pirate's Cove from that of comparators Margueritagrill and Riverside Resort. (Doc. 39

---

[1] There also remains pending a petition for writ of certiorari (Count VIII). (Doc. 39).

at 18-21). Specifically, Plaintiff alleges that Pirate's Cove was subjected to rigorous enforcement of County rules, ordinances, regulations, and policies, while the comparators were not subjected to similarly rigorous enforcement. (*Id.* at 18-19). The Court previously dismissed this claim without prejudice because Plaintiff had not demonstrated that Pirate's Cove was similarly situated to the comparators identified by Plaintiff. (Doc. 32). Plaintiff has still failed to remedy this deficiency, and this claim should be dismissed with prejudice as Plaintiff has already been provided two opportunities to amend the claim.

The Equal Protection Clause provides that "[n]o State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1. The Supreme Court has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that [he or] she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). "To prove a 'class of one' claim, the plaintiff must show (1) that he [or she] was treated differently from other similarly situated individuals, and (2) that the defendant unequally applied a facially neutral ordinance for the purpose of discriminating against him [or her]." *Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1307 (11th Cir. 2009).

In establishing that he or she was treated differently from similarly situated individuals, a plaintiff generally must identify comparators. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1202-07 (11th Cir. 2007); *see also Crystal Dunes Owners Ass'n Inc. v. City of Destin*, 476 F. App'x 180, 184-85 (11th Cir. 2012). Moreover, the "showing that

3

two projects were similarly situated requires some specificity," *Campbell v. Rainbow City*, 434 F.3d 1306, 1314 (11th Cir. 2006), which means that the projects being compared "must be *prima facie* identical in all relevant respects." *Racine Charter One, Inc. v. Racine Unified Sch. Dist.*, 424 F.3d 677, 680 (7th Cir. 2005) (internal quotation marks omitted). "A 'class of one' plaintiff might fail to state a claim by omitting key factual details in alleging that it is 'similarly situated' to another." *Griffin Indus., Inc.*, 496 F.3d at 1205; *see also Apothecary Dev. Corp. v. City of Marco Island*, 517 F. App'x 890, 892 (11th Cir. 2013).

Plaintiff has added additional facts to his second amended complaint in an attempt to demonstrate that Pirate's Cove is similarly situated to Margueritagrill and Riverside Resort. (Doc. 39 at 19-20). Although the additional facts demonstrate that the properties are similar in some respects, Plaintiff has still not demonstrated that the properties are "*prima facie* identical in all *relevant* respects." *Racine Charter One, Inc.*, 424 F.3d at 680 (internal quotation marks omitted) (emphasis added). As the Court previously concluded, the County's decisions in this case were "undeniably multi-dimensional, involving varied decisionmaking criteria applied in a series of discretionary decisions made over an extended period of time." *Griffin Indus., Inc.*, 496 F.3d at 1203. In pleading a "class of one" equal protection claim, a challenged decision that is multidimensional necessitates a greater level of factual detail so that the court can determine whether the governmental action was the result of discrimination. *Id.* at 1205. Thus, when a decision is multi-dimensional, it is more onerous to establish that a comparator is similarly situated. *Id.* ("[W]hen plaintiffs in 'class of one' cases challenge the outcome of complex,

4

multi-factored government decision-making processes, similarly situated entities must be very similar indeed." (internal quotation marks omitted)).

Given the multidimensional nature of Plaintiff's claim, it is unlikely that Plaintiff could identify any comparator who was similarly situated, and, nonetheless, Plaintiff has not done so in the present case. Plaintiff's equal protection claim therefore fails.

### 2. Inverse Condemnation (Count IX)

Plaintiff asserts a claim for inverse condemnation under Florida law for the alleged taking of his property rights.[2] (Doc. 39 at 42-45). Plaintiff asserts that the County intentionally delayed the development of his project in several respects to such an extent that it amounted to a temporary taking of his property to which he is entitled to just compensation. (*Id.*). Specifically, Plaintiff highlights the County's (1) indication that it will refuse to recognize Plaintiff's development rights as arising under a coastal lakes commercial designation, (2) failure to object to the 180-day proposed occupancy of the project until eighteen months after the intended occupancy had been disclosed to the County, and (3) failure to respond to requests by Plaintiff for zoning and legal interpretations in a timely manner. (*Id.* at 43). The County argues that Plaintiff's claim for inverse condemnation is not ripe because Plaintiff has not identified a final decision of the County that resulted in a taking. (Doc. 40 at 7-12).

"Inverse condemnation is a cause of action by a property owner to recover the value of property that has been *de facto* taken by an agency having the power of eminent domain

---

[2]Plaintiff also asserts a federal takings claim as an alternative claim to his state-law claim for inverse condemnation (Count IV).

5

where no formal exercise of that power has been undertaken." *Osceola Cnty. v. Best Diversified, Inc.*, 936 So. 2d 55, 59-60 (Fla. 5th DCA 2006) (citing *Rubano v. Dep't of Transp.*, 656 So. 2d 1264 (Fla. 1995)). To determine whether a government regulation of land use amounts to a taking of property, a court must determine whether the government action deprived the owner of all economically beneficial use of the land. *See Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992); *see also Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005) (explaining that a regulation that deprives an owner of all economically beneficial use of property constitutes a per se taking for which the government must pay just compensation); *Tampa-Hillsborough Cnty. Expressway Auth. v. A.G.W.S. Corp.*, 640 So. 2d 54, 58 (Fla. 1994) ("A taking occurs where regulation denies substantially all economically beneficial or productive use of land.").

In a "takings" case, a landowner must first establish that his claim is ripe by demonstrating "a final determination from the government as to the permissible use, if any, of the property. If there has not been a final determination, the [l]andowners' attempt to seek redress from the court is premature." *Collins v. Monroe Cnty.*, 999 So. 2d 709, 715 (Fla. 3d DCA 2008) (citing *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186-94 (1985)); *see also Alachua Land Inv'rs, LLC v. City of Gainesville*, 107 So. 3d 1154, 1159 (Fla. 1st DCA 2013).

Plaintiff makes the broad, sweeping conclusion that a final decision has been reached in the present case because the County's conduct has precluded "any" development of the property. (Doc. 46 at 12). But, as an initial matter, Plaintiff's assertion is belied by

the materials attached to his complaint.[3]  For example, in denying Plaintiff's application for a planned unit development, and amendments to the Generalized Future Land Use Map and the Zoning Atlas, the Citrus County Board of County Commissioners indicated that they would be willing to consider and approve a less intense use of the property.[4]  (Doc. 1, Ex. V at 144-47).

More important, Plaintiff has not demonstrated a final decision by the County because no actual decision was ever made by the County as to the conduct of which Plaintiff complains.  The allegations in Plaintiff's complaint go to the County's conduct that allegedly resulted in delays, but do not allege that the County actually took a position or made a *decision* adverse to Plaintiff's interests.  Namely, Plaintiff alleges that a taking occurred because the County "has indicated that it is refusing, or will refuse, to recognize the development rights attendant" to the area of Plaintiff's property zoned coastal lakes commercial.  (Doc. 39. ¶ 130).  Plaintiff has not alleged that the County *has* refused to recognize the development rights associated with the portion of Pirate's Cove zoned coastal lakes commercial or has taken any action to prevent Plaintiff from developing that portion of his property.  Plaintiff only alleges that the County *might* take such a position.

Plaintiff also alleges that a taking occurred because the County failed to "object to the form of occupancy on Plaintiff's property from February[] 2012 to August[] 2013."

---

[3]On a motion to dismiss, a court may consider documents attached to the complaint or directly referred to in the complaint, and doing so will not convert the motion to one for summary judgment.  *See Solis-Ramirez v. U.S. Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

[4]One commissioner stated, "I do believe that there's opportunity there. . . .  But what I am looking at that is in front of me right now, I do not believe is consistent with our Comprehensive Plan." (Doc. 1, Ex. V at 144).  Another commissioner remarked, "I think there's opportunity for the piece of property and I would hope that you come back with a different plan and you invest in our community, but there's no way I can support this as this time."

(*Id.* at ¶ 133). However, as was previously established, Plaintiff prevailed on his appeal of the occupancy issue to the Citrus County Board of County Commissioners. (Doc. 20 at 9). While the County originally took a position adverse to Plaintiff on the occupancy issue, the final resolution was in Plaintiff's favor.

Finally, Plaintiff alleges a taking occurred because he requested legal and zoning interpretations that the County failed to provide. (*Id.* at ¶ 134). Inaction is not a decision nor does it indicate the County's position regarding Plaintiff's rights.

None of the allegations asserted by Plaintiff in the second amended complaint reflect a *decision* adverse to Plaintiff's interests in developing his property. Rather, as Plaintiff plainly states in his complaint, his issue is with the alleged delays caused by the County's conduct. Because there was no decision made by the County adverse to Plaintiff and Plaintiff's complaints merely go to the delays caused by the County's conduct, Plaintiff has not satisfied the ripeness requirement by demonstrating that there was a final decision.

Although Plaintiff's complaint does not appear to challenge any specific final decision of the County, it does assert that the County's conduct resulted in "delay." (Doc. 39). "The precept of 'extraordinary delay' is . . . an exception to the general ripeness rule." *Resource Inv., Inc. v. United States*, 85 Fed. Cl. 447, 493 (2009); *see also Howard v. Murray*, 184 So. 3d 1155, 1167 (Fla. 1st DCA 2015); *Grosscup v. Pantano*, 725 F. Supp. 2d 1370, 1379 (S.D. Fla. 2010). An extraordinary delay in the processing of an application can result in a temporary regulatory taking. *Aloisi v. United States*, 85 Fed. Cl. 84, 93 (2008).

In *Aloisi*, with respect to permitting decisions, the Court stated:

> In determining if there is a delay sufficient to support a temporary taking, the length of any alleged extraordinary delay must be put into context and examined in relation to the regulatory permitting scheme, the nature of the permitting process, and reasons for the delay. Delays are inherent in complex regulatory permitting processes. The nature of the regulatory scheme is especially critical when the permitting process requires detailed technical information necessary to determine the environmental impact of a proposed project. When reviewing the length of time alleged to be extraordinary, government agencies dealing with the complex regulatory schemes should be afforded significant deference in determining what additional information is required to satisfy statutorily imposed obligations. We must also recognize that delays may be attributable to the permit applicant as well as the government. Rarely will there be a takings based on extraordinary delay without a showing of bad faith.

*Id.* (citations omitted). Here, Plaintiff has neither alleged nor demonstrated that the delays caused by the County's conduct were not a normal incident of the development process. Additionally, as required to establish extraordinary delay, Plaintiff has neither alleged nor demonstrated that the County acted in bad faith.

In summation, Plaintiff has not demonstrated that his takings claim is ripe for review because he has not shown a final decision by the County.[5] Plaintiff has also not satisfied the extraordinary delay exception to the ripeness requirement by alleging that the County acted in bad faith. Having provided Plaintiff a sufficient opportunity to state a claim, his claim for inverse condemnation under Florida law should be dismissed with prejudice.[6]

---

[5] To the extent Plaintiff is alleging a taking based on some other decision of the County, such is not clear from the second amended complaint, and having already provided Plaintiff leave to amend his complaint several times, the Court declines to allow Plaintiff an additional opportunity to clarify the precise decision of the County he challenges.

[6] Florida law tracks federal law regarding whether a taking claim is ripe. *See Collins*, 999 So. 2d at 715 (recognizing that Florida adopted the ripeness requirement from federal law). Because Plaintiff's state-law takings claim is not ripe, his federal takings claim (Count IV) would also be unripe and should be dismissed.

## CONCLUSION

Accordingly, it is therefore **ORDERED AND ADJUDGED** that:

1. Defendant Citrus County's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 40) is GRANTED.

2. Counts III, IV, and IX of Plaintiff's complaint are DISMISSED with prejudice.

**DONE** and **ORDERED** in Tampa, Florida, this 25th day of April, 2016.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record